## PETER BOYD v. W. BUGBEE SMITH.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILA-
DELPHIA COUNTY.

Argued April 3, 1889—Decided October 7, 1889.

[To be reported.]

*(a)* An agreement was made between a debtor and his creditors that a fund to be raised by the debtor should be distributed ratably among the creditors, one who declined to release the debtor to receive a smaller percentage than the others who consented to release. To avoid delay in the distribution, certain releasing creditors agreed to accept a chose

Statement of Facts.

in action of the debtor on account of their dividends, permitting all others
to receive their full dividends in cash.

(b) In pursuance of this agreement, the non-releasing creditor was paid
his dividend in cash, and the debtor executed and delivered to M, one of
the releasing creditors, an assignment in the following form: "I hereby
assign and set over to M, for the benefit of my creditors, or of such of
them whom he may designate who have made rebates in their settle-
ment, . . . . . the sum of $1,781.59, which sum is now in the hands
of Peter Boyd, Esq." This assignment was never recorded.

1. By his participation in this transaction the non-releasing creditor was
precluded from subsequently attaching said chose in action in the hands
of the person owing the same, and from setting up in support of the
attachment that said transfer was made in such a form as to be an as-
signment for the benefit of creditors and therefore void for want of
recording.

2. In determining whether a transfer of property by a debtor to one of his
creditors, for the benefit of the transferee and other creditors, is an as-
signment for the benefit of creditors, within the meaning of the act of
March 24, 1818, 7 Sm. L. 132, so as to be void if not recorded, regard
must be had to the substance rather than to the form of the transaction.

3. Having regard to the substance rather than form, the transaction was
not an assignment for the benefit of creditors but simply a contract
between creditors and their debtor. M, and the other accepting credi-
tors, were purchasers of the chose in action, the consideration being a
release of the debtor and a partial foregoing of their claims against
the cash fund: Wallace v. Wainwright, 87 Pa. 263, distinguished.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and
MITCHELL, JJ.

No. 178 January Term 1889, Sup. Ct.; court below, No.
438 March Term 1888, C. P. No. 3.

On May 5, 1888, to the number and term of the court below,
W. Bugbee Smith brought assumpsit against Thomas Gamon,
and on June 4, 1888, recovered in said action a judgment
against the defendant for $798.45. Upon the same day an
attachment execution was issued upon this judgment, the trus-
tees of the Scots' Presbyterian Church in the city of Philadel-
phia, Peter Boyd, Thomas B. McAvoy and George Kugler
being made garnishees therein. Said attachment having been
duly served, and the garnishees having appeared, interrogato-
ries in the usual form were served, to which the garnishees all
filed answers. The material parts of Peter Boyd's answer
were as follows:

Statement of Facts.

" Prior to May 1, 1888, the trustees of the Scots' Presbyterian Church borrowed from The Philadelphia Saving Fund Society, the sum of $15,000 on a new church. building in the city of Philadelphia. As the said building was then and is now subject to a possible lien for work and materials done and furnished towards the erection and construction of the same, the saving fund society declined to pay said money borrowed to any one except the said Peter Boyd, who was to hold the same, and distribute amongst the different parties entitled to it upon receiving releases of liens. The defendant, Thomas Gamon, was the general contractor for the erection of the church building, and claimed that there was a sum due him of $1,981.69, which, prior to May 19, 1888, was reduced to the sum of $1,781.59. The trustees of the Scots' Presbyterian Church claimed a set-off of about $400 on account of the unfinished and defective condition of the church building. Pending the settlement of this question and others, the said Thomas Gamon executed a release of lien, which was delivered to the said Philadelphia Saving Fund Society by the said Thomas Gamon, on condition that a sum not less than $2,000 should be held by the said Peter Boyd, the said garnishee, out of which the claim of the said Thomas Gamon should be paid when ordered so to be by the said trustees of the Scots' Presbyterian Church, or by the judgment of a court of record. To this condition the trustees of the Scots' Presbyterian Church assented, and on May 19th, there was money sufficient in the hands of the said garnishee, under the above arrangement, to pay to the said Thomas Gamon the sum of $1,781.59, or any smaller amount, when ordered to be paid by the trustees of the Scots' Presbyterian Church. On May 28, 1888, Thomas B. McAvoy, delivered to the said Peter Boyd an assignment, of which the following is a true copy :

'PHILADELPHIA, May 19, 1888.

'I hereby assign and set over to Thomas B. McAvoy, for benefit of my creditors, or such of them whom he may designate, who have made rebates of their settlements in the Board of Education, the sum of $1,781.59, which sum is now in the hands of Peter Boyd, Esq., and to be paid on an order by the board of trustees of Scots' Presbyterian Church.

[Signed]                    THOMAS GAMON.'

" This assignment was verbally accepted by the said Peter Boyd on the same terms under which he had held the money that was due Thomas Gamon, namely, that none of it was to be paid until an order was given by the Scots' Presbyterian Church, or there was a judgment of a court of record. There is, therefore, the sum of at least $1,300 now in the garnishee's hands due under the contract made with Thomas Gamon for the erection of the church building aforesaid, which sum is subject to a set-off by reason of possible liens that may be yet filed, and which sum was assigned by the said Thomas Gamon to Thomas B. McAvoy, as above set forth."

Subsequent to the filing of this answer, Peter Boyd presented a petition setting forth that he had been requested by the attorney of Thomas B. McAvoy, another of the garnishees, to annex to his answer the answer of said McAvoy, and praying that McAvoy's answer be considered a part of the answer of the petitioner. The material allegations of said answer of McAvoy were as follows:

"About May 17, 1888, said defendant owed me $2,735.98. About that date the board of education of the city of Philadelphia owed him $39,436.55 for the erection of certain school-houses. Certain parties, of whom I was one, had claims against said defendant for work done and material furnished for those school-houses and for advances therefor amounting to upwards of $50,000.00. The board of education would not pay the $39,436.55 unless certain conditions were complied with, and on or about May 18, 1888, the creditors, including the said plaintiff, agreed with said defendant and with said board to accept 83 per cent of their claims, and all the creditors but plaintiff voluntarily agreed with said defendant and with each other to release said defendant from any further claim, in consideration, among other things, of the payment of the defendant's notes not yet matured. On May 19, 1888, the day on which the settlement was to be made, it was ascertained that the amount of money in the hands of the board was not sufficient to pay 83 per cent to all the creditors then appearing. There was a deficiency of about $1,800. Defendant then agreed to collect and pay to the board a claim for $1,781.59 which he had against the Scots' Presbyterian Church. Finding that there would be a delay in collecting it, this respondent who

was acting as chairman of the meeting of creditors, voluntarily with certain other creditors, agreed to accept this claim, less cost of collection, in part payment of their said dividend of 83 per cent. The creditors who thus agreed to take this claim in payment were as follows :

| Name. | 83 per cent on claim. | Proportion of dividend included in $1,781.59. |
|---|---|---|
| Thomas B. McAvoy, | $2,278 35 | $300 00 |
| Charles Benton, | 2,470 60 | 200 00 |
| J. Rex Allen, | 1,161 00 | 200 00 |
| George Rowe, | 1,589 40 | 200 00 |
| J. D. McInnes, | 3,099 84 | 300 00 |
| C. Williams & Son, | 1,119 00 | 147 00 |
| J. Bond, | 706 62 | 200 00 |

" The remaining creditors were paid their dividend of 83 per cent in cash, and in order to make said dividend of 83 per cent, said claim of $1,781.59 was estimated as part thereof, and was transferred to this respondent for himself and said last-mentioned creditors as equivalent to a cash payment, and all of said creditors except said plaintiff thereupon released defendant.

" Defendant thereupon executed to this respondent the following transfer, viz. :

[Here followed a copy of the assignment dated May 19, 1888, set out in the answer of Peter Boyd, supra.]

" The said Scots' Presbyterian Church was notified of said assignment between May 19 and May 28, 1888, and accepted the same subject to any question as to the correctness of the amount and time of payment. Said church claims some deduction from said amount. Said transfer is not recorded.

" Said plaintiff received from said board of education his dividend of 83 per cent in cash at said settlement, without any rebate, and the amount of his present judgment is for the unpaid 19 per cent of his original claim."

A rule for judgment upon his answer against Peter Boyd as garnishee, having been taken by the plaintiff, the court, without filing an opinion, made the rule absolute and judgment was entered accordingly. Thereupon Peter Boyd took this writ assigning the entry of said judgment for error.

*Mr. E. Cooper Shapley* (with him *Mr. Henry S. Cattell*), for the plaintiff in error :

1. The transaction imports simply the sale of a claim from Gamon to McAvoy. In consideration of receiving this claim, the parties for whose use it was transferred permitted the other creditors to be paid their full percentage in cash out of the money on hand. The words "assign and set over" are used in the paper, but there was no possible way other than by an assignment to transfer the title to the claim from Gamon. There was no evidence that he was insolvent, the arrangement being simply one by which the sub-contractors were to share the loss on the contracts, and the act of March 24, 1818, 7 Sm. L. 132, relating to assignments for the benefit of creditors, applies only to assignments of property to trustees on account of inability at the time to pay debts, not to cases where the circumstances import a sale : Wallace v. Wainwright, 87 Pa. 263. McAvoy, to whom this transfer was made, had a beneficial interest in the fund, in which respect the case differs from Wallace v. Wainwright.

2. The paper was not similar to an assignment with a preference. All the cases holding an assignment to one person, in trust for others, to be an assignment for creditors, are cases in which by the transfer a preference was created, which, under the act of April 17, 1843, P. L. 273, made the assignment enure to the benefit of all creditors. But here the object of the paper was to secure equality. The plaintiff participated in the fund equally with the other parties. On the principle of equitable estoppel, if on no other, the plaintiff ought to be precluded from attacking an arrangement to which he was a party, and in the benefits of which he participated. As in York County Bank v. Carter, 38 Pa. 446, McAvoy and the other creditors, who took this claim, purchased it by relinquishing their claim on the fund to that extent, and the equity in favor of the transferee is stronger here than in that case. Wallace v. Wainwright, 87 Pa. 263, which goes farther than any other case in holding a transfer in payment of certain creditors to be an assignment for benefit of creditors, was rested on the view that there was a preference. Kern v. Powell, 98 Pa. 253, was a case of a preference within the act of 1843.

3. The form of the transaction is not material : Johnson's

App., 103 Pa. 377. The act of 1818 has reference only to a certain peculiar class of instruments, well known in legal and commercial practice: Beans v. Bullitt, 57 Pa. 221; Fallon's App., 42 Pa. 235. It is a characteristic of them that they are substantially unilateral arrangements, in which the assignor alone declares the conditions of the grant, the grantees being mere volunteers in the acceptance of the assigned property, and not actual purchasers of it: Fallon's App., supra. McAvoy was as much a purchaser in this case as the Duke of Rainsares was in Fallon's App. The substance rather than the form must be regarded.

*Mr. Edward P. Bliss*, for the defendant in error:

1. It is made to appear in the answer that the plaintiff received a dividend of 83 instead of 81 per cent, through an inadvertence which is corrected however, by the statement immediately following, that his judgment is for the unpaid 19 per cent of his claim. The single question is whether the assignment by Gamon of a part of his property to McAvoy for the benefit of his creditors, or such of them as McAvoy might designate, is an assignment in trust for creditors. To state it would seem to compel an affirmative answer, and hence the assignment is void for want of recording, under the act of 1818. The proposition that the transaction was a purchase by McAvoy, is negatived by two facts: there was no consideration except the pre-existing debt due McAvoy, and the admitted intention was to give a selected class of creditors an interest in the fund 'through McAvoy as their trustee. But the circumstances, motives and intention of the assignor are of no importance, if the means employed are forbidden by law: Sutton v. Ashurst, 4 Phila. 301; Murphy's Assignment, 2 Pittsb. 271.

2. This assignment, being in writing and free from ambiguity, and there being no allegation of fraud, accident or mistake, its language is to be construed by the court as matter of law. The case is the exact converse of York Co. Bank v. Carter, 38 Pa. 446. There, the papers on their face imported a sale, not a trust for creditors; here, the assignment on its face imports a trust. And not only was there a trust for creditors, but there was also a trust resulting to the assignor, as the fund assigned was $1,781.59, while the debts to be pre-

ferred amounted to but $1,547. Wallace v. Wainwright, 87 Pa. 263, establishes a more stringent doctrine than we need to contend for. Although the words, "in trust for," were there stricken out of the instrument before execution, and the words, "in payment of," substituted, from which it was argued that a trust was expressly disclaimed, this court held the instrument void for non-recording. In Driesbach v. Becker, 34 Pa. 152, a case not unlike the present one, the proceeds of the property were held liable to attachment by creditors.

3. The points that there was no evidence of Gamon's insolvency and that no preference was created, were not raised in the court below and should not be considered here. But they have no bearing on the case, even if true in point of fact. The act of 1818 declares broadly that all assignments by debtors in trust for creditors shall be recorded or become void; it contains not one word relating to insolvent debtors or to preferences. In fact, however, the insolvency of Gamon was admitted in the court below, and the assignment shows on its face a preference of the most pernicious character, since the selection of the favored creditors is left to the assignee. There is no element of estoppel in the case. There is no averment anywhere that Gamon or any other person was deceived or misled by any word or act of the plaintiff.

OPINION, MR. JUSTICE McCOLLUM:.

We must dispose of this case on the answers to the interrogatories filed in it, and these show that the creditors of Thomas Gamon, who accepted his claim against the Scots' Presbyterian Church, in part payment of their dividends, were purchasers of it. It was united with his demand against the board of education, and the sum was considered by the creditors, who were parties to the settlement, as a cash fund from which each should draw eighty-three per cent of his claim. An agreement of all the creditors with Gamon and the board of education, was necessary to enable any creditor to receive any portion of this fund. In order to create a fund sufficient to pay the dividends agreed upon, it was at first proposed that Gamon should collect and pay to the board of education his claim against the Scots' Presbyterian Church, and that the board of education should pay to the several creditors their

dividends in money. But as this plan involved delay, and a prompt settlement was desired, certain creditors consented to accept the claim as the equivalent of money and to apply it on their dividends in the proportion agreed upon between them. For their convenience it was transferred to one of their number to collect and pay to each accepting creditor his share of it. The board of education then paid to these creditors the balance of their dividends, and to the remaining creditors their full dividends, in money. All the creditors, except the plaintiff in this attachment, in pursuance of the arrangement under which the claim against the Scots' Presbyterian Church was transferred and the money due from the board of education was paid, then canceled their demands against Gamon.

The agreement which governed the distribution was entire and all who shared in the distribution were parties to it. It was an agreement which blended in one fund the debts due Gamon from the board of education and the Scots' Presbyterian Church, and distributed that fund as money. The creditor who has in his pocket the cash dividend which it gave him, cannot seize and appropriate to his own use the chose in action which other creditors accepted in lieu of currency. As he has his share of the fund, he cannot repudiate the agreement which created it and under which it was distributed. As between the parties to the settlement, the creditors who accepted the claim against the Scots' Presbyterian Church have as valid a title to it, as the remaining creditors have to their cash dividends. If the plaintiff in this attachment received, as the answers allege, 83 per cent on account of his demand against Gamon, or as he contends 81 per cent of it, his relation to his fellow creditors is the same, because his dividend was such as the agreement gave him. An election by him to take 81 per cent and have a judgment against Gamon for the balance, rather than 83 per cent and satisfy his claim, did not enable him to seize and appropriate to the payment of that judgment the dividend of another creditor.

There is another fatal objection to this action. The transaction disclosed by the answers was not an assignment for the benefit of creditors. It was a contract between them and their debtor by which their demands against him were satisfied. It created a fund, of which ninety-six per cent was money on

hand and the balance a chose in action. The creditors who accepted the latter allowed the rest of the creditors to receive their dividends in full from the cash portion of the fund. The contract of Gamon with his creditors divested all his interest in the fund transferred to them, and, with the exception of the claim of the plaintiff in this attachment, extinguished all their demands against him.

In the case of Wallace v. Wainwright, 87 Pa. 263, "Wallace & Krebs had no beneficial interest whatever in the claims assigned to them. They were neither creditors nor purchasers; they had made no advances and they had no lien." There was no element of contract between debtor and creditor in it. In the present case McAvoy to whom the claim was transferred was a creditor and purchaser; he and the other accepting creditors made advances from their cash portion of the fund and they satisfied their demands against their debtor. Regard must be had to the substance rather than the form of the transaction.

We are of opinion that it was error to enter judgment against the garnishees upon the answers filed.

Judgment reversed and procedendo awarded.